*State of Maryland v. Harry Malik Robertson,* No. 40, September Term 2018, Opinion by Hotten, J.

**CRIMINAL LAW – EVIDENCE – OPEN DOOR DOCTRINE – STANDARD OF REVIEW –** The Court of Appeals held that the appropriate standard of review for the determination of whether a party has opened the door to otherwise inadmissible evidence is *de novo* because the open door doctrine is ultimately a question of law. The Court reviews the separate inquiry of whether a party's rebuttal evidence is proportional for an abuse of discretion.

**CRIMINAL LAW – EVIDENCE – OPEN DOOR DOCTRINE –** The Court of Appeals applied *de novo* review in its finding that defense counsel had opened the door for the State to introduce rebuttal evidence. Though the State was entitled to rebut the image of Robertson's good character, the prosecution's questioning exceeded the scope of the open door doctrine.

Circuit Court for Baltimore City
Case No. 116111012
Argued: January 8, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 40

September Term, 2018

_____

STATE OF MARYLAND

v.

HARRY MALIK ROBERTSON

_____

Barbera, C.J.,
Greene,
McDonald,
Watts,
Hotten,
Getty,
Wilner, Alan M.
(Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Hotten, J.
McDonald and Watts, JJ., dissent.

_____

Filed: April 2, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Harry Malik Robertson ("Robertson") was involved in an altercation at a residential area near Morgan State University. The incident culminated in the stabbing death of one of its participants. A jury in the Circuit Court for Baltimore City found Robertson guilty of accessory after the fact to murder, but acquitted him of first- and second-degree murder and of carrying a weapon openly with intent to injure. On appeal, the Court of Special Appeals held that the trial court erred in permitting the State to question Robertson regarding his participation in a previous, unrelated incident during which a knife had been brandished ("previous incident"), because the door had not been opened for questioning by the State. The Court of Special Appeals also held that, because the introduction of the previous incident was not harmless error, Robertson's conviction for accessory after the fact must be reversed and the case remanded for a new trial. On appeal, the State presents the following questions for our review:

1. What is the appropriate standard of review of a trial court's ruling that a party has opened the door to otherwise inadmissible evidence?

2. Applying the appropriate standard of review, did the [Court of Special Appeals] err by substituting its judgment for the trial court's determination that [Robertson] had opened the door to otherwise inadmissible evidence?

For reasons discussed *infra*, we find that application of whether particular evidence may be admitted based on the legal principle of "opening the door" is reviewed *de novo*. We further conclude that defense counsel opened the door, thereby enabling the State to question Robertson regarding the previous incident. However, despite the application of the open door doctrine, the State used the evidence of Robertson's participation in the prior

incident in a manner that exceeded the scope of the doctrine. Accordingly, we shall affirm the judgment of the Court of Special Appeals.

## BACKGROUND

1. Factual Background

On the evening of February 1, 2016, Robertson, then a student at Coppin State University, was involved in an altercation between two groups of men near the Morgan State University campus. The fight concluded after one of the participants, Gerald Williams ("the decedent"), was stabbed and ultimately died from his wounds.

The impetus for the fight began nearly a week earlier. Daequon Gordon, a Prince George's Community College student, purchased ten dollars' worth of marijuana from Brandon Parker, a Morgan State University student. Gordon purchased the marijuana with a counterfeit fifty-dollar bill and received the marijuana and forty dollars in return.

When Parker learned that the fifty-dollar bill was counterfeit, he contacted Gordon and demanded his money back. A meeting was arranged, and both Parker and Gordon showed up to the meeting with friends. Among them was the decedent, who was one of Gordon's friends, and Robertson, who was one of Parker's friends. The subsequent details were in dispute at trial.

Gordon, testifying for the State, contended that when the two groups met that evening, he told Parker, "I got your money. You'll have to take it from me. I'm not paying you." Gordon then punched Parker, provoking a larger fight among the group. As Robertson and others ran from the area, the decedent collapsed and Gordon, observing that the decedent was bleeding, called an ambulance.

2

Another State witness, Isaiah McClin, who fought as part of the decedent's group, testified that "all hell broke loose" after the groups met, and though he did not recall who was fighting, he heard the decedent yell something during the fight, shortly after which the fight abruptly ended. Thereafter, McClin observed the decedent lying on the ground and "bleeding out." Although McClin did not see the stabbing, or observe Respondent in possession of a weapon, he recalled Robertson and the decedent fighting at some point.

D'ana Glenn, another witness for the State, testified that she observed the altercation and never saw a large group fighting with each other. Rather, Glenn testified, only Robertson and the decedent were fighting. She stated that she saw the decedent charge towards Robertson, and Robertson, in an effort to "push forward toward him," stabbed the decedent. Upon further examination, Glenn conceded that her view of Robertson was not "that clear" and that she only saw Robertson holding a knife after "[he] and the decedent 'impact[ed].'"

Robertson denied stabbing the decedent and further denied having a knife. He contended that he fought two men during the fight: Mathew Agogo and McClin. Robertson also testified that he heard the decedent say "I'm bleeding."

Robertson testified that after the men dispersed, he told his cousin, Ron, who was also engaged in the fight, that they should leave. Robertson got into Ron's car along with four of their friends. One of the friends was Abayomi Akinwold.

During the drive, Robertson testified that Akinwold was "beating himself up" and had blood on his hand and jacket. At one point, the car stopped, Akinwold exited, and tossed a knife into a storm drain. The car subsequently stopped at a friend's home, which

3

Akinwold entered. When Akinwold returned to the car moments later, his hands were clean. Ron drove the friends to their respective homes, leaving Robertson at his mother's house.

Following his arrest, Robertson was detained at the Baltimore Central Booking and Intake Center. James Alston, who was also detained at the facility on a probation violation, testified that Robertson admitted that he had killed someone during a fight. Alston denied receiving anything in exchange for his testimony, but admitted that his probation violation had been dropped prior to Robertson's trial.

2. Procedural Background

*Proceeding in the Circuit Court for Baltimore City*

At the beginning of the trial, Robertson faced charges of first-degree murder, second-degree murder, and carrying a dangerous weapon openly with intent to injure. At the end of Robertson's case, at the suggestion of the court and with agreement from counsel, an accessory after the fact charge was added. The jury subsequently found Robertson guilty of accessory after the fact to murder, but acquitted him of the remaining charges.

At trial, the following colloquy occurred between Robertson and his counsel during direct examination:

[DEFENSE COUNSEL]: Now did you ever get into any trouble as a juvenile?

[ROBERTSON]: No.

[DEFENSE COUNSEL]: Ever just stopped for some minor issue?

4

[THE STATE]:  Again Your Honor, I'm going to object to the leading nature of his questions.

THE COURT:  Okay, I'm going to overrule that one. Go ahead.

[DEFENSE COUNSEL]:  Thank you. Any kind of trouble when you were a juvenile?

[ROBERTSON]:  No.

[DEFENSE COUNSEL]:  How about as an adult, when you turned 18?

[ROBERTSON]:  No.

[DEFENSE COUNSEL]:  Ever even arrested for anything?

[ROBERTSON]:  Never been arrested. This is my first time being arrested.

During cross-examination, the State inquired about Robertson's participation in a previous, unrelated incident.[1]  Defense counsel objected, and a bench conference ensued.[2]

---

[1] The previous incident was a fight which occurred a year before the incident at issue. Robertson, who was then attending Morgan State University, was punched by one of the university's football players while on campus.  Robertson struck back, prompting his friends and other football players to join.  Carlos Mars, one of Robertson's friends, noted that Robertson was being beaten to the ground.  Mars stood over Robertson, brandishing a knife to keep the football players away.  Mars was charged, *State of Maryland v. Carlos Mars*, Circuit Court for Baltimore City, Case No. 115103008. Robertson was suspended from Morgan State, but no charges were brought against him. Robertson claims he opted to transfer to Coppin State during the time of his suspension so that he could resume his studies.  ("I refused to miss a year of college.  So I transferred to Coppin State.").

[2] At the bench conference, defense counsel asserted that there was a Motion *in limine* for excluding Robertson's involvement in the previous incident.  The record contains a motion to suppress statements that Robertson may have made to law enforcement officials and a proffer agreement between Robertson, his counsel, and the State.  However, the record does not contain a formal, written Motion *in limine*.

The trial transcript reveals that the hearing judge acknowledged the existence of a Motion *in limine* (*see* exchange provided below) and also acknowledged that defense counsel and

5

Based on defense counsel's questioning during Robertson's direct examination, the trial judge asserted that defense counsel had opened the door to enable the State to inquire about the previous incident.

*Proceeding before the Court of Special Appeals*

Robertson raised two issues on appeal:

[1.] Whether the trial court erred in permitting the State to question him about his participation in an earlier fight during which a knife had been brandished.

[2.] Whether the evidence was sufficient to support his conviction for accessory after the fact to murder.

The Court of Special Appeals held that defense counsel had not opened the door for the State to introduce the previous knife incident because defense counsel had limited his questioning to Robertson's criminal and juvenile record. Because defense counsel's questioning was limited in scope, Robertson had "opened the door, at most, to being cross-examined . . . as to his claim that he had never been previously involved with the justice

_____

the State had previously agreed that Robertson's involvement in the previous incident would not be mentioned at trial.

| [DEFENSE COUNSEL]: | Your Honor, this is outrageous. We have a Motion [*in limine*] that was - - |
|---|---|
| THE COURT: | **Well I know, I know**. But his testimony was - - |
| [THE STATE]: | He opened the door. |
| THE COURT: | --yeah, he opened the door. |
| [THE STATE]: | He said he had no trouble whatsoever. That's why it was my first question. |
| [DEFENSE COUNSEL]: | Yes, but we talked about the knife incident that was not coming in at all. |
| THE COURT: | **I understand that**. If -- you put your witness on and he testified. You asked him and he testified, he's never been in trouble, he's a good boy. |

system, as either an adult or juvenile[.]" *Robertson v. State of Maryland*, No. 2731, slip op. at 8 (Md. App. June 6, 2018). The Court held that, because the introduction of the previous incident was not harmless error, Robertson's conviction for accessory after the fact must be vacated and remanded for a new trial ("Given the similarity of the earlier incident . . . we cannot say, beyond a reasonable doubt, that the decision to permit inquiry about the previous incident was harmless error."). *Id.* at 11.

Regarding the second issue, the Court held that Robertson had not preserved his insufficiency claim and declined to review the issue for plain error.

## STANDARD OF REVIEW

A trial court's ruling on the admissibility of evidence is generally reviewed for abuse of discretion. *Hopkins v. State*, 352 Md. 146, 158, 721 A.2d 231, 237 (1998). Errors of law and purely legal questions are reviewed *de novo* and this Court affords no deference to the decision of the court below. *Schisler v. State*, 394 Md. 519, 535, 907 A.2d 175, 184 (2006).

The discussion provided in Section III.A. below concludes that this Court should review the trial court's ruling that defense counsel opened the door to otherwise inadmissible evidence *de novo*.

## DISCUSSION

The open door doctrine is based on principles of fairness and serves to "balance any unfair prejudice one party may have suffered." *Little v. Schneider*, 434 Md. 150, 163, 73 A.3d 1074, 1081 n.6 (2013). It authorizes parties to "'meet fire with fire,' as they introduce otherwise inadmissible evidence [henceforth, "rebuttal evidence"] in response to evidence

7

put forth by the opposing side." *Id*. at 157, 73 A.3d at 1078 (citing *Terry v. State*, 332 Md. 329, 337, 631 A.2d 424, 428 (1993)). The doctrine manifests the claim of, "[m]y opponent has injected an issue into the case, and I ought to be able to introduce evidence on that issue." *Clark v. State,* 332 Md. 77, 85, 629 A.2d 1239, 1243 (1993).

A. **The issue of whether defense counsel opened the door for the State to cross-examine Robertson about the previous incident is a legal question that we review *de novo*.**

1. Questions of relevance, including the open door doctrine, are questions of law that are reviewed *de novo*.

The State contends that this Court should apply a bifurcated standard of review to the open door doctrine that first, reviews for clear error a trial court's decision that a party has opened the door as to a new issue, and second, applies an abuse of discretion standard as to whether an opposing party's rebuttal evidence is proportionate to the evidence presented. The State conflates the question of whether the open door doctrine applies with whether the rebuttal evidence is proportionate. These are two separate inquiries.

The open door doctrine "authorizes admitting evidence which otherwise would have been irrelevant in order to respond to . . . admissible evidence which generates an issue." *Clark*, 332 Md. at 84, 629 A.2d at 1242. In short, the doctrine "makes relevant what was irrelevant[.]" *Conyers v. State*, 345 Md. 525, 546, 693 A.2d 781, 790 (1997). Given the doctrine's ability to enlarge the universe of relevant evidence at trial, the open door doctrine is a "rule of expanded relevancy[.]" *Clark*, 332 Md. at 84, 629 A.2d at 1242.

Relevant evidence is evidence that makes a fact in issue more or less probable. Md. Rule 5-401. Evidence that is not relevant is inadmissible. Md. Rule 5-402. The

8

determination of evidentiary relevance is a legal question that is reviewed *de novo*. *Perry v. Asphalt & Concrete Services, Inc.*, 447 Md. 31, 48, 133 A.3d 1143, 1153 (2016). "Although trial judges have wide discretion 'in weighing relevancy in light of unfairness or efficiency considerations, trial judges do not have discretion to admit irrelevant evidence.'" *Id.* (quoting *State v. Simms*, 420 Md. 705, 724, 25 A.3d 144, 155 (2011)). Given that the open door doctrine is a matter of relevancy, which is a legal issue, this Court reviews the question of whether a party opened the door to introduce rebuttal evidence *de novo*.

2. The State's citations to cases that use bifurcated review are inapposite to the case at bar.

Though this Court has not waivered on the principle that legal issues are reviewed *de novo*, the State relies on two cases in its brief to suggest that the "articulated [ ] two-part standard of review of certain trial court decisions . . . should likewise apply here." The State points to this Court's decisions in *Kusi v. State*, 438 Md. 362, 91 A.3d 1192 (2014), and *Grimm v. State*, 458 Md. 602, 183 A.3d 167 (2018), to support its contention that the bifurcated standard of review used in those cases is appropriate in the case at bar. However, the State neglects to consider that both *Kusi* and *Grimm* involved questions that were heavily reliant upon intensive fact-finding and credibility assessments—issues of fact that we review with deference.

In *Kusi*, this Court held that the trial court did not commit clear error when it found that the defendant, a Ghanaian native whose native language was Ashanti, could comprehend English. 438 Md. at 384, 91 A.3d at 1204. Further, this Court held that the

9

trial court acted within its discretion when it denied an interpreter for the defendant at trial. *Id.* at 386, 91 A.3d at 1205. The State contends that *Kusi* established precedent for a two-tiered standard of review that applies "a clearly erroneous standard to the judge's factual findings before reviewing a judge's legal determination under an abuse of discretion standard." *Id.* at 383, 91 A.3d at 1203 (internal citations omitted). However, the case at bar is distinct from *Kusi*. In *Kusi*, former Maryland Rule 16-819 provided express procedures for a trial judge's determination of whether an interpreter was needed at trial. *Id.* at 366, 91 A.3d at 1194. The rule required the trial judge to render factual findings about the defendant's ability to understand and communicate in English, as well as the defendant's ability to assist in his defense.[3] *Id.* at 366-67, 91 A.3d at 1194. After a detailed

---

[3]  Former Md. Rule 16-819 provided the procedures to determine whether an interpreter was needed. Former Rule 16-819 stated, in pertinent part:

> (c) **Procedures to determine the need for interpreters.**
>
> * * *
>
> (2) Spoken language interpreter. (A) Examination of party or witness. To determine whether a spoken language interpreter is needed, the court, on request or on its own initiative, shall examine a party or witness on the record. The court shall appoint a spoken language interpreter if the court determines that:
>> (i) the party does not understand English well enough to participate fully in the proceedings and to assist counsel, or
>> (ii) the party or a witness does not speak English well enough to be understood by counsel, the court, and the jury.
>
> (B) Scope of examination. The court's examination of the party or witness should include questions relating to:
>> (i) identification;
>> (ii) active vocabulary in vernacular English; and
>> (iii) the court proceedings.

*Kusi*, 438 Md. at 366-67, 91 A.3d at 1193.

exchange with the defendant, the trial judge concluded that Kusi could effectively understand and communicate in English. *Id.* at 378, 91 A.3d at 1200-01.

On appeal, this Court reviewed the trial judge's factual findings concerning the defendant's ability to speak and understand English for clear error. *Id.* at 383, 91 A.3d at 1203. In commenting on the application of clear error review, this Court noted that "[t]he trial judge had an opportunity firsthand to hear [the defendant] speak English during the lengthy process[.]" *Id*. at 384, 91 A.3d at 1204. This Court further noted that application of the clear error standard was appropriate because "the trial judge in this case, as required by Rule 16-819, first made factual findings concerning [the defendant's] ability to use the English language[.]" *Id.* at 383, 91 A.3d at 1203.

Given the extensive fact-finding, it was appropriate to review the trial judge's determination regarding the defendant's English capacity for clear error. As opposed to the trial judge in *Kusi*, who engaged in fact-finding pursuant to former Rule 16-819, the trial judge in the instant case did not need to engage in exhaustive fact-finding to  determine whether the open door doctrine applied. In the case at bar, reviewing the trial transcript is sufficient for ascertaining whether the doctrine applied based on defense counsel's questioning. Unlike *Kusi*, there was no fact-intensive inquiry that the trial judge engaged in that necessitates clear error review in the case at bar.

In *Kusi*, this Court reviewed the trial court's final determination, about whether an interpreter was needed, for an abuse of discretion. *Id.* at 367, 91 A.3d at 1195. In contrast to the open door doctrine, which is a legal issue, the trial judge's final determination of whether to appoint an interpreter for Kusi was a discretionary determination based on the

11

fact-finding that the judge had engaged in previously. *See id.* at 384, 91 A.3d at 1204 (stating that "where a trial court makes a discretionary ruling, such as the determination of whether or not to appoint an interpreter, we apply an abuse of discretion standard of review."). Therefore, the final determination by the judge in *Kusi* was discretionary, as opposed to the legal determination that the open door doctrine necessitates in the case at bar.

In *Grimm v. State,* this Court reviewed a trial court's determination that probable cause existed based on a dog's alert to search Grimm's car during a traffic stop. 458 Md. at 635, 183 A.3d at 186-87. This Court held that the issue of the dog's reliability was reviewed for clear error, but that the ultimate legal issue for determining whether probable cause existed was reviewed *de novo*. *Id.* at 650, 183 A.3d at 195. The *Grimm* Court cited *Miller v. Fenton*, 474 U.S. 104 (1985), stating that "where an issue falls somewhere between a clear legal issue and a simple historical fact, the determination of the nature of the issue turns on an analysis of which judicial actor is better positioned to decide the question." *Id.* at 609, 183 A.3d at 171. This Court determined that:

> An issue as to a drug detection dog's reliability requires a trial court to assess the credibility of lay and expert witnesses; to watch, when available, a recording of a drug detection dog's scan; to weigh and determine the weight to be given documentary evidence, such as the drug detection dog's training records, field reports, and certifications; to consider the qualifications of any experts, and their opinions about the evidence; and to determine whether, under the totality of the circumstances, the drug detection dog is reliable; and whether the drug detection dog's alert indicated that drugs were present. As such, a trial court is better positioned than an appellate court to determine a drug detection dog's reliability.

12

*Id.* The nature of the fact-finding at the trial level therefore warranted clear error review as to the dog's reliability. In contrast, the trial judge in the instant case was no better positioned to decide the question of whether the open door doctrine applied: issues of reliability and credibility do not need to be considered for determining whether defense counsel's questioning opened the door for the State's introduction of the previous incident.

In *Grimm*, this Court utilized a second standard of review for the ultimate issue of whether probable cause existed. *Id.* at 650, 183 A.3d at 195. The *Grimm* Court was guided by the Supreme Court's ruling that "the ultimate questions of reasonable suspicion and probable cause are to be reviewed *de novo*." *Id.* at 640, 183 A.3d at 189 (citing *Ornelas v. United States*, 517 U.S. 690, 691, 116 S.Ct. 1657, 1659 (1996)). Importantly, this Court noted that, even when an issue involves a legal question, underlying facts may play a role. *Id.* at 651, 183 A.3d at 196 (citing *Miller v. Fenton*, 474 U.S. 104, 112, 106 S.Ct. 445, 450 (1985)). Regardless, the legal question is reviewed *de novo* by appellate courts. *Id.* at 607, 183 A.3d at 170. In the instant case, the open door doctrine is a legal issue; however, the factual analysis required in *Kusi* and *Grimm* is absent. Therefore, we do not apply the dual standard that the State advocates to review the open door doctrine.

3. An abuse of discretion analysis is applicable to the inquiry of proportionality, which is a separate question from whether the open door doctrine applies.

The State cites to a third case, *Little v. Schneider*, 434 Md. 150, 73 A.3d 1074 (2013), to support its contention that *de novo* review is inapplicable to the open door doctrine. In *Little*, we held that the trial court had not abused its discretion when it allowed rebuttal evidence that inquired about the defendant-physician's lack of board certification.

13

*Id.* at 163, 73 A.3d at 1081. During the malpractice trial, defense counsel represented defendant as a model surgeon and expressed the defendant's qualifications and achievements in detail. *Id.* at 158, 73 A.3d at 1078-79. Despite the trial judge's warning that such "unnecessary bolstering" might cause him to revisit the Motion *in limine* to exclude the doctor's lack of board certification, defense counsel delved into the defendant's accomplishments in detail during direct examination. *Id.* at 158-60, 73 A.3d at 1079-80. Due to the bolstering of the defendant's accomplishments, the trial judge permitted plaintiff's counsel to ask the defendant about board certification on redirect examination. The judge explained his rationale for permitting the plaintiff's rebuttal evidence, stating that "there is a balance here. So if you are going to puff up, they get to puff down." *Id.* at 161, 73 A.3d at 1080.

On review, we held that:

> The doctrine of opening the door has limitations. It allows for the introduction of otherwise inadmissible evidence, but only to the extent necessary to remove any unfair prejudice that might have ensued from the original evidence. In this regard, [the defendant] argues that the trial court abused its discretion in allowing [the plaintiff] to improperly use the lack of board certification as evidence of negligence. Specifically, [the defendant] draws our attention to [the plaintiff's] use of the board certification evidence on re-direct examination and in closing argument. We review both for abuse of discretion.

*Id.* at 163-64, 73 A.3d at 1082 (internal citations and quotations omitted). Our review of the open door doctrine in *Little* did not contemplate whether the door had been opened for rebuttal evidence, but rather, we reviewed the proportionality of the rebuttal evidence permitted by the trial judge **once the door had already been opened**. This is a

14

separate inquiry that does not pertain to our standard of review for the preliminary question of whether the door has been opened for rebuttal evidence. As stated, this initial inquiry is a question of law that is reviewed by this Court *de novo*. The secondary question of proportionality is one in which this Court provides deference to a trial judge. In *Little*, we determined that **once the door had been opened**, it was not an abuse of discretion for the trial judge to permit the plaintiff to inquire about the defendant's lack of board certification. *Id.* at 163, 73 A.3d at 1081.

Given that the issue before us seeks to resolve the standard of review for the open door doctrine, the State's reference to *Little* is inapposite. We apply *de novo* review to questions of law, and the open door doctrine is a question of law that we review without deference to the trial judge.

**B. In applying *de novo* review, we find that the door was open for the State to provide rebuttal evidence, but the State's subsequent use of the evidence, reviewed for an abuse of discretion, exceeded the scope of the doctrine.**

At trial, the following colloquy occurred between Robertson and his counsel on direct examination (also produced in Section I.2, *supra*):

[DEFENSE COUNSEL]: Now did you ever get into **any trouble** as a juvenile?

[ROBERTSON]: No.

[DEFENSE COUNSEL]: Ever just stopped for some minor issue?

[THE STATE]: Again Your Honor, I'm going to object to the leading nature of his questions.

THE COURT: Okay, I'm going to overrule that one. Go ahead.

[DEFENSE COUNSEL]: Thank you. **Any** kind of trouble when you were a juvenile?

15

[ROBERTSON]: No.

[DEFENSE COUNSEL]: **How about as an adult**, when you turned 18?

[ROBERTSON]: No.

[DEFENSE COUNSEL]: Ever even arrested for anything?

[ROBERTSON]: Never been arrested. This is my first time being arrested.

(emphasis added). The Court of Special Appeals observed that defense counsel's questioning did not open the door, and if it did, the questioning was limited to rebuttal evidence pertaining to Robertson's previous involvement with the justice system. *Robertson*, slip op. at 8. The Court of Special Appeals concluded that defense counsel's questioning was narrowed by the context of Robertson's engagement with the law. *Id.* at 10. Given the narrowed scope of questioning, had the door been opened, proportional rebuttal evidence could solely address Robertson's previous engagement with the criminal justice system. *Id.* Because the previous incident did not result in any criminal charges, but merely related to Robertson's suspension from Morgan State University, the Court of Special Appeals concluded that the trial court abused its discretion regarding the proportionality of the State's rebuttal evidence. *Id.* at 11.

1. <u>The general nature of defense counsel's questioning opened the door for the State to rebut evidence of Robertson's good character.</u>

We first analyze the issue of whether defense counsel's questioning opened the door to rebuttal evidence from the State. We find that defense counsel's questioning was not specific to Robertson's previous engagement with police, but was general in nature. He asked whether Robertson was ever in **any** kind of trouble as a juvenile. Counsel's next

16

question—"How about as an adult?"—carried over from the previous question, implying the same general questioning regarding Robertson's character. The use of the term "any" expands defense counsel's questioning beyond Robertson's previous engagement with the justice system. The Court of Special Appeals's selective quotations from counsel's questioning and Robertson's arguments about the use of legal terminology are unconvincing to limit the State's rebuttal evidence to Robertson's criminal history. The State, under the open door doctrine, was permitted to introduce evidence to rebut the image of Robertson as an upstanding individual who had never been in **any** trouble. *See* Md. Rule 5-404(a)(2)(A);[4] *see also* Md. Rule 5-608(b).[5] Such rebuttal evidence was within the ambit of the open door doctrine. We agree with the trial judge's rationale that the door was

---

[4]  Md. Rule 5-404(a)(2)(A) states:

Character of Accused.  An accused may offer evidence of the accused's pertinent trait of character.  If the evidence is admitted, the prosecution may offer evidence to rebut it.

[5] Beyond utilizing the open door doctrine to neutralize defense counsel's image of Robertson's good character, defense counsel may have also opened the door regarding Robertson's credibility because he did not answer honestly when counsel inquired about whether he had gotten into "any trouble."  Md. Rule 5-608(b) states:

**b) Impeachment by Examination Regarding Witness's Own Prior Conduct Not Resulting in Convictions.**  The court may permit any witness to be examined regarding the witness's own prior conduct that did not result in a conviction but that the court finds probative of a character trait of untruthfulness. Upon objection, however, the court may permit the inquiry only if the questioner, outside the hearing of the jury, establishes a reasonable factual basis for asserting that the conduct of the witness occurred.  The conduct may not be proved by extrinsic evidence.

17

open for the State's rebuttal evidence. At a bench conference, the following colloquy

occurred between the trial judge and defense counsel after defense counsel's objection over

the State's questioning about the previous incident:

> THE COURT: If - - you put your witness on and he testified. You asked
> him and he testified, he's never been in trouble, he's a good boy.
>
> [DEFENSE COUNSEL]: Right.
>
> THE COURT: All right. Now, it seems to me that would open up testimony
> on number one, credibility, and number two, maybe he did have trouble in
> someplace [*sic*]. I think it's legitimate to bring [the previous incident] in at
> this point. The door is open. . . .

Beyond the issue of credibility, *see.* n.5, we agree that the general nature of defense

counsel's questioning generated an issue as to Robertson's good character. Robertson

attempted to benefit from his good character, which opened the door to the State's

questioning about his previous disciplinary action at Morgan State University.

> 2. <u>Though defense counsel opened the door for the State to introduce evidence
> of the previous knife incident, the State's use of the evidence exceeded the
> scope of the open door doctrine.</u>

Though the State was entitled to question Robertson about the previous knife

incident to rebut the assertion that he had never been in any trouble, the State improperly

used the evidence throughout the trial. The State's evidence exceeded the scope of the

open door doctrine. Rather than simply introducing the previous incident to rebut

Robertson's general good character, the State elicited details about the incident. *See Khan*

*v. State*, 213 Md. App. 554, 575, 74 A.3d 844, 856 (2013) (holding that, under the open

door doctrine, a party can use rebuttal evidence of a prior incident, but the rebuttal evidence cannot seek to elicit "*details*" of the prior incident).

On cross-examination, the following exchange occurred between Robertson and the State:

[THE STATE]:  It's true, you got kicked out of Morgan State, isn't it?

[ROBERTSON]:  Well, I didn't get kicked out.  I got an interim - - I don't know the right complete word - - it's interim suspension.

\*\*\*

[THE STATE]:  Let's talk about the incident that you had where you were involved in a stabbing incident the year before with a football player, is that correct?

[ROBERTSON]:  Yes.

[THE STATE]:  Okay.  And tell us about that.

[ROBERTSON]:  I could tell you about it vividly, just saying that it was kind [*sic*] of jealous of me and my friends, basically because we had their girls. They was just basically hating on us, so - -

[THE STATE]:  Wasn't it more like a football player slept with your girlfriend and you got upset?

[ROBERTSON]:  No.

[THE STATE]:  Okay.

[ROBERTSON]:  He didn't sleep with my girlfriend at all.

[THE STATE]:  All right, but you pulled a knife out, is that correct?  On the football player.

[ROBERTSON]:  I pulled—no.

19

[THE STATE]:  Okay.  Well, what exactly happened then?

[ROBERTSON]:  I was fighting a football player before.  The whole football team came out of the building and hopped into the fight, and it was only my little cousin that came up there and Lose, that previously didn't go there. . . . But he pulled out a knife, and to keep the football players at bay, from hopping into my fight [*sic*].  And I guess it was like the whole football team, so whatever happened - - I don't know, I was on the ground. Because it [*sic*] was a video, so you could vividly see that I was getting kicked in the face on the ground.

[THE STATE]: You like to fight then right?  I mean you're fighting last year, you're in this fight.  You and your friends like to fight.

[ROBERTSON]:  No.  I don't like to fight at all. I'd never been - - that was my first fight in school period.

\*\*\*

[THE STATE]: Well, let's talk about Morgan State players though.  I mean you said that this Morgan State player was coming after you and you pulled out a knife right? . . .

[ROBERTSON]: No, I said my friend . . . pulled out a knife to keep the football players at bay from hopping into the fight, which they hopped into anyway.

\*\*\*

[ROBERTSON]:  I didn't have a knife in both situations.

On multiple occasions throughout the exchange, Robertson clarified that he did not have a knife during the previous incident, nor was he the individual who pulled a knife during that incident.  Regardless of this clarification, the State reiterated that Robertson wielded a knife and attempted to elicit details of the prior incident.  In *Khan v. State*, the Court of Special Appeals described the appropriate rebuttal evidence permitted once the door had been opened to such evidence.

20

The testimony elicited from [the witness] during the State's redirect examination was narrowly tailored to respond to [the] testimony during the defense's cross-examination. **As soon as the State [, responding to character evidence introduced by the defense,] attempted to elicit testimony regarding the** *details* **of the prior complaint, defense counsel's objections were sustained.** [The witness] did not discuss the details of this complaint; [the] testimony was only that a complaint had been made. Similarly, neither [of the other witnesses] testified as to *details* of the prior complaint. [Khan's wife] acknowledged that she was aware of the prior complaint against her husband, but she did not know the details of its substance, and that was the end of the State's inquiry.

213 Md. App. at 575-76, 74 A.3d at 856 (emphasis in original) (bolding added). *Khan* demonstrates the limited scope of the open door doctrine. The State was permitted to rebut the evidence of Robertson's good character by citing the previous incident. However, the State was **not** permitted to elicit details about the incident.

*Abuse of Discretion Standard*

"Abuse of discretion [exists] where no reasonable person would take the view adopted by the [trial] court, **or** when the court acts without reference to [ ] guiding rules or principles." *Alexis v. State*, 437 Md. 457, 478, 87 A.3d 1243, 1254 (2014) (citations omitted) (emphasis added). *Khan* established an important guiding principle regarding the scope of rebuttal evidence permitted after the door has been opened: a party's rebuttal evidence **cannot** elicit details about a previous incident. In the case at bar, the circuit court acted without reference to this guiding principle when it failed to interject in the State's repeated inquiries that elicited details about the prior occurrence. As defined, an abuse of discretion occurs "when the court acts without reference to [ ] guiding [ ] principles," *Alexis v. State*, *supra*, the very thing that happened here.

21

Importantly, the Court of Special Appeals in *Khan* held that, **because the State did not elicit details regarding the particular incident**, the trial court had not abused its discretion. 213 Md. App. at 575, 74 A.3d at 856. The Court held that "[w]hile the proverbial door was opened to the disputed testimony, it remained for the trial court to balance its probative value against its prejudicial nature . . . and here we see no abuse of discretion." *Id.* at 575, 74 A.3d at 856. The *Khan* Court deferred to the trial court's judgment *because* the scope of rebuttal evidence was proper; here, it was not. Further guidance regarding the abuse of discretion standard is provided in *Nash v. State*, 439 Md. 53, 67, 94 A.3d 23, 31 (2014), where we wrote that:

> [A] certain commonality [exists] in all these definitions: the notion that a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. Rather, [a] court's decision is an abuse of discretion **when it is well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable. . . . that kind of distance [from the center mark] can arise in a number of ways.**

(emphasis added) (quotation marks, original emphasis, and internal citations omitted). In the case at bar, the circuit court's "distance from the center mark" arose when it failed to follow guiding principles regarding rebuttal evidence. *Khan* established that details regarding a prior incident should not be permitted in rebuttal evidence. This is not the reality of what occurred in the instant case. Rather, the State impermissibly expanded the **scope** of the open door doctrine and therefore, its use of rebuttal evidence was not a proportional response to the general good character that defense counsel painted. As such, the trial court abused its discretion regarding the proportionality of the response: we do

22

not reverse "simply because we would not have made the same ruling[,]" but rather, we find that the trial court's determination regarding the proportionality of the rebuttal evidence was one of the "number of ways" of distancing itself from the "center mark" of acceptable conduct.

3. Defense counsel sufficiently objected to the State's use of the previous incident during Robertson's cross-examination.

The State contends that defense counsel had opportunity to object to prejudicial statements during trial and failed to object to any questions about the previous incident. However, defense counsel adequately objected to the State's use of the previous incident during cross-examination.

The State posed the following question to Robertson on cross-examination, "[n]ow you testified that you've never been in trouble before, is that correct?" Defense counsel did not object to this inquiry, as it was a clarification about what Robertson had already testified to on direct examination. The State's inquiry did not allude to the previous incident and therefore, any objection by defense counsel was unwarranted at this stage of cross-examination.

Further into cross-examination, the State posed the following question, "And now you indicated that you left Morgan State University. That's not really correct is it? You got kicked out of Morgan State for an incident that happened with a knife the year before." Defense counsel immediately objected and asked to approach the bench. Counsel asserted that there had been an agreement with the State so that "the knife incident was not coming in at all." *See* n.2. Despite defense counsel's potential concurrence that he had opened the

23

door to rebut Robertson's good character,[6] he objected to the use of the knife fight. Defense counsel did not need to specify the grounds for objection, but was required to make a timely objection to the evidence he sought to exclude. *See* Md. Rule 4-323(a).[7] Case precedent reveals that a party should object to each question or assert a continuing objection to an entire line of questioning. *Ware v. State*, 170 Md.App 1, 19, 906 A.2d 969, 980 (2006) (citing *Brown v. State*, 90 Md. App. 220, 225, 600 A.2d 1126 (1992)); *see e.g., Fowlkes v. State*, 117 Md. App. 573, 587, 701 A.2d 862, 869 (1997). However, we have also held that

---

[6] Presumably, defense counsel agreed that he had painted an image of Robertson's good character, as demonstrated by his response to the judge at the ensuing bench conference.

> THE COURT: If - - you put your witness on and he testified. You asked him and he testified, he's never been in trouble, he's a good boy.

[DEFENSE COUNSEL]: **Right.** (emphasis added).

[7] Md. Rule 4-323(a) states, in relevant part:

> **(a) Objections to Evidence.** An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived.

In the case at bar, defense counsel timely objected and the objection was not waived.

> The rule further states:

> The grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs.

In the instant case, neither the court nor the State directed or requested that defense counsel state the grounds for his objection.

objections need not be reasserted if those objections "would only spotlight for the jury the remarks of the [State]." *Johnson v. State*, 325 Md. 511, 515, 601 A.2d 1093, 1094 (1992). In *Johnson*, we wrote:

> The objection interrupted the [State] in midsentence, and it was perfectly clear what would follow if the objection were not sustained. We think that the objection went not only to what was said but also to what was obviously to come. By overruling the objection, the judge demonstrated that he was permitting the [State] to continue along the same line. It was apparent that his ruling on further objection would be unfavorable to the defense. Persistent objections would only spotlight for the jury the remarks of the [State]. In the circumstances, the absence of a further objection did not constitute a waiver. *See* Md.Rule 4-323(c).

325 Md. at 514-15, 601 A.2d at 1094. In the case at bar, defense counsel immediately objected to the State's inquiry pertaining the previous incident. When the trial judge overruled defense counsel's objection, the State pursued a continuing line of questioning about Robertson's participation in the previous incident. Continuing objections would have been futile and would likely "spotlight for the jury the remarks of the [State]." *Id.* As such, defense counsel's initial objection to the State's continuing line of questioning was sufficient.

**CONCLUSION**

We conclude that the appropriate standard of review for the determination of whether a party has opened the door to otherwise inadmissible evidence is *de novo* because the open door doctrine is ultimately a question of law. A secondary inquiry regarding the proportionality of a party's rebuttal evidence is a separate issue that we review for abuse of discretion.

25

In applying a *de novo* standard of review, we conclude that defense counsel opened the door for the State to introduce rebuttal evidence. Defense counsel's broad questioning painted an image of Robertson's good character that enabled an avenue of inquiry previously foreclosed to the State. Though the State was entitled to inquire about Robertson's suspension from Morgan State University, the scope of the State's questioning during cross-examination exceeded the scope of the open door doctrine. As such, the trial court abused its discretion in permitting the State to use the rebuttal evidence in the manner presented at trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

Circuit Court for Baltimore City
Case No. 116111012
Argued: January 8, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 40

September Term, 2018

_____

STATE OF MARYLAND

v.

HARRY MALIK ROBERTSON

_____

Barbera, C.J.,
Greene,
McDonald,
Watts,
Hotten,
Getty,
Wilner, Alan M.
(Senior Judge, Specially Assigned)

JJ.

_____

Dissenting Opinion by McDonald, J.,
which Watts, J., joins.

_____

Filed: April 2, 2019

I agree with most of the reasoning and analysis of the Majority Opinion. However, near the end it misapplies that reasoning to hold that the trial court abused its discretion. Accordingly, I dissent from that holding and the Court's judgment.

This appeal concerns application of the "opening the door" doctrine. Under that doctrine, a party "opens the door" to the admission of otherwise inadmissible evidence when the party injects an issue into a case and the opposing party is allowed, as a matter of fairness, to respond with evidence that, although previously inadmissible, has thereby become relevant. *Little v. Schneider*, 434 Md. 150, 157 (2013).

Before us, the parties contest: (1) how an appellate court should review a trial court's determination that a party has "opened the door"; (2) whether, in this case, Mr. Robertson's testimony on direct examination opened the door to cross-examination about a prior incident; and, if so, (3) whether the trial court improperly failed to limit that cross-examination.

With respect to the first issue, the Majority Opinion thoughtfully analyzes the standard of review and concludes that an appellate court should apply a split standard of review: (a) a *de novo* standard in assessing whether a trial court has correctly determined that the doctrine has been triggered and (b) an abuse-of-discretion standard in assessing the trial court's decision as to what evidence to allow in as a result. Majority slip op. at 7-15. I agree with this reasoning.

With respect to the second issue, the Majority Opinion conducts a *de novo* review of the record and concludes that Mr. Robertson's testimony on direct examination that he was (literally) a Boy Scout and had never previously been in "any trouble" opened the door

to cross-examination about his involvement in a knife fight a year earlier that resulted in his suspension from college.  Majority slip op. at 15-18.  Again, I agree with that analysis.  So far, so good.

The Majority Opinion then turns to the third question – whether the trial court abused its discretion in how it permitted the prosecution to respond to the testimony that "opened the door."  The Majority Opinion concludes that "the State improperly used the evidence [of the prior knife fight] throughout the trial."  Majority slip op. at 18.  In fact, the evidence of the prior knife fight appeared late in the trial only during the cross-examination of Mr. Robertson, the last witness on the last day of the trial.  That testimony occupies approximately four pages of the trial transcript.

At the outset of that testimony, Mr. Robertson's counsel objected to any reference to the prior knife fight, calling it "outrageous."  He cited what he referred to as a "motion in limine," but stated no particular basis for the objection.  As the Majority Opinion notes, no motion in limine appears in the record of this case, so the basis and scope of this defense objection are not clear – other than that the topic of the prior knife fight should be completely off limits.[1]  It appears from the colloquy quoted in the Majority Opinion that defense counsel eventually conceded – or at least accepted the trial court's ruling – that he

---

[1] Majority slip op. at 5-6 & n.2.  The absence of a written motion in limine – or even an oral one – necessarily hampers any effort to ascertain specifically what the defense wished to exclude.  Defense counsel referred to a discussion that "the knife incident … was not coming in at all."  *Id*.  One may speculate that the phantom motion was instead an oral agreement between counsel not to introduce certain topics into the case – unless, of course, the other side did so first.

2

had opened the door to the topic in his direct examination of Mr. Robertson. *See* Majority slip op. at 18. Defense counsel did not thereafter object to any of the specific questions posed by the State on the topic.

In discussing this issue, the Majority Opinion lays out why it would have reached a different outcome than the trial court but that, of course, is not the standard for abuse of discretion. *Nash v. State*, 439 Md. 53, 67 (2014) ("a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling").

The Majority Opinion's treatment of the one case it relies upo in support of its conclusion is telling. *See Khan v. State*, 213 Md. App. 554 (2013). In that case, a security guard in a cosmetics store was charged with assault and third-degree sex offenses when he sprayed perfume on two teenage girls in the store and then touched various parts of their bodies. One of the issues on appeal concerned the introduction of evidence of prior customer complaints of inappropriate touching by the security guard. The Court of Special Appeals agreed with the trial court that the door had been opened to testimony concerning those complaints when defense counsel elicited positive testimony from the security guard's employer concerning his past work performance. When the defense objected to testimony concerning details of the prior complaints, the trial court excluded that evidence of those details.

The Court of Special Appeals affirmed that exercise of discretion by the trial court in response to the defense objection, stating: "While the proverbial door was opened to the disputed testimony, it remained for the trial court to balance its probative value against its

3

prejudicial nature, and here we see no abuse of discretion." 213 Md. App. at 575. The intermediate appellate court thus made clear that, in applying an abuse-of-discretion standard, it was deferring significantly to the trial court's judgment in responding to the defense objection to evidence of the details of the prior incident. Contrary to the suggestion of the Majority Opinion, nothing in *Khan* indicates that it was declaring a one-size-fits-all approach for trial courts when a party opens the door to the introduction of certain evidence. The abuse-of-discretion standard inherently involves a case-by-case assessment.

In making that case-by-case assessment, an appellate court cannot overlook the fact that in this case, unlike *Khan*, there was no objection registered at trial to the testimony concerning the details of the prior incident.[2] The Majority Opinion suggests that, in not interrupting and limiting the cross-examination *sua sponte*, the trial court "failed to follow guiding principles." Majority slip op. at 22. But a critical guiding principle here is that an objection must be made to evidence when the grounds become apparent, or the objection is waived. Maryland Rule 4-323(a). The purpose of that rule is "to prevent 'sandbagging' and to give the trial court the opportunity to correct possible mistakes in its rulings." *Bazzle v. State*, 426 Md. 541, 562 (2012) (internal citations omitted). In ruling on an objection to a question on cross-examination, "a trial court is not required to imagine all reasonable offshoots of the argument actually presented to it." *Peterson v. State*, 444 Md. 105, 148 (2015) (internal quotation marks and citations omitted). Here no objection at all was made

---

[2] I do not disagree that the defense objection at the outset of that testimony preserved an objection to whether the door had been opened. But the trial court resolved that question against the defense – and, indeed, the Majority Opinion agrees with that ruling.

4

to testimony concerning the details of the prior incident.[3]  Thus, the Majority Opinion reverses the trial court based on an objection that was never presented to the trial court.

It is the view of the Majority Opinion, apparently, that the trial judge abused his discretion when he failed to inject himself into the cross-examination.  This would seem to establish a standard under which a trial court must act as back-up defense counsel (without the benefit of having defense counsel's knowledge of where the questions will likely lead), and intervene *sua sponte* in a cross-examination or risk being found to have abused its discretion.

I cannot agree that the failure of the trial court to interrupt cross-examination *sua sponte* in these circumstances was, in the oft-quoted description of the abuse-of-discretion standard, "well removed from any center mark … and beyond the fringe of what [is] minimally acceptable."[4]

Judge Watts has advised that she joins this opinion.

---

[3] It may be that this was because the evidence consisted entirely of Mr. Robertson's version of that incident.  Indeed, in referring to the prior incident in her closing argument, the prosecutor largely accepted Mr. Robertson's version of that incident – *i.e.*, that he had not wielded the knife during that fight (rather, a friend had done so).  Defense counsel, perhaps understandably, registered no objection to that argument, either while the argument was being made or afterwards.

[4] *North v. North*, 102 Md. App. 1, 14 (1994) (Wilner, C.J.).